___

SO ORDERED,

*[signature]*

**Judge Neil P. Olack**
United States Bankruptcy Judge
Date Signed: July 29, 2016

The Order of the Court is set forth below. The docket reflects the date entered.
___

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

WOODROW PRICE, III,                                    CASE NO. 15-03421-NPO

DEBTOR.                                                CHAPTER 13

### ORDER DENYING MOTION SEEKING
### RELIEF TO TEMPORARILY LIFT AUTOMATIC STAY

This matter came before the Court for hearing on July 11, 2016 (the "Hearing"), on the Trustee's Objection to Amended Unsecured Proof of Claim (the "Claim Objection") (Dkt. 29) filed by James L. Henley Jr., the standing chapter 13 panel trustee (the "Trustee"); the Response/Answer to Trustee's Objection to Unsecured Creditor's Amended Proof of Claim (the "Response to Objection") (Dkt. 32) filed by Jerry W. Baughman ("Baughman"); the Motion Seeking Relief to Temporarily Lift Automatic Stay (the "Stay Motion") (Dkt. 38) filed by Baughman; and the Response to Motion for Relief from Stay [Dkt. No.: 38] (the "Response") (Dkt. 46) filed by Woodrow Price, III, the debtor (the "Debtor") in the above-styled chapter 13 bankruptcy case (the "Bankruptcy Case"). At the Hearing, Letitia Johnson ("Johnson") appeared on behalf of the Trustee, William Wesley Stover ("Stover") appeared on behalf of the Debtor, and Baughman represented himself *pro se,* as he has since he first appeared in the Bankruptcy Case.

Having considered the matter and being fully advised in the premises, the Court denied the Stay Motion from the bench and reset the Claim Objection and the Response to Objection for hearing on August 8, 2016, at 10:00 a.m.[1]  This Order memorializes and supplements the Court's bench ruling.

## Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of the Bankruptcy Case pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (G).  Notice of the Stay Motion was proper under the circumstances.

## Facts

1. The Debtor initiated the Bankruptcy Case on November 3, 2015, by filing a voluntary petition for relief pursuant to chapter 13 of the Bankruptcy Code (the "Petition") (Dkt. 1).

2. The Debtor filed his Chapter 13 Plan (the "Plan") (Dkt. 2) contemporaneously with the Petition.  In addition to proposing to pay $890.00 per month to the Trustee for thirty-six (36) months, the Debtor proposed to pay $0.00 to his unsecured creditors.  The Trustee filed the Trustee's Objection to Confirmation (the "Confirmation Objection") (Dkt. 16) on December 28, 2015, objecting to confirmation of the Plan.  The Trustee argued in the Confirmation Objection that confirmation should be denied, or, alternatively, that the Debtor should be required to increase "distribution payments to unsecured creditors who timely file proofs of claim to [] thirty percent (30%) . . . ."  (Confirmation Obj. at 2).  An Agreed Order (the "Agreed Order") (Dkt. 20) was entered on January 29, 2016, amending the Plan to increase distribution to unsecured creditors

---

[1] The Order Resetting Hearing (Dkt. 48) was entered on July 12, 2016.

Page 2 of 14

with timely filed proofs of claim to thirty percent (30%). The Plan was subsequently confirmed on February 5, 2016. (Dkt. 22).[2]

3.      On the Debtor's Schedule F-Creditors Holding Unsecured Nonpriority Claims (Dkt. 4 at 14), the Debtor indicated that Baughman held an unsecured claim for a "Pending Judgment." (*Id.*). On the Debtor's Statement of Financial Affairs, the Debtor disclosed a Hinds County Court lawsuit Baughman initiated against him based on a "Collection Account" (the "Hinds County Action") (Dkt. 4 at 23-24).

4.      On March 7, 2016, Baughman filed a proof of claim in the Bankruptcy Case, claiming that the Debtor owes him $50,000.00 for "Lost Wages" as well as "Vehicle Physical Damage" (the "POC") (Claim No. 5-1 at 2).[3] Baughman filed an amended proof of claim (Claim No. 5-2) on March 15, 2016, claiming that the Debtor owes him $50,000.00 for "Vehicular Accident, Medical injuries, Lost Wages, Vehicle Totaled." (Claim No. 5-2 at 2). Baughman subsequently filed a second amended proof of claim (the "Second Amended POC") (Claim No. 5-3) on March 21, 2016, alleging that his unsecured claim is "not to exceed" $200,000.00 for "Personal Injury." Baughman attached to the Second Amended POC a copy of the complaint he filed against the Debtor in the Hinds County Action on August 11, 2015, in which he alleged that the Debtor fell asleep while driving and crashed into his vehicle, causing damages. (Second Amended POC, Supporting Documentation at 6-11).

---

[2] At the Hearing, Johnson and Stover agreed that the Debtor can now afford only to pay 10% of his unsecured claims. Accordingly, a motion to modify should be filed. Because the Debtor can only afford to pay 10% to his unsecured creditors, however, the Court will proceed under this presumption.

[3] As the Court will discuss herein, Baughman filed several amended proofs of claim. The Court will use the term "POC" to refer collectively to the proofs of claim of Baughman, unless specified otherwise.

5.    The Trustee filed the Claim Objection on April 19, 2016, objecting to the Second Amended POC because Baughman "does not offer proof of liability adjudicated by law." (Cl. Obj. at 1). The Trustee argued that pursuant to 11 U.S.C. § 502,[4] "the claim should not be allowed in order to prevent undue delay of the administration of the case, unless [Baughman] can render proof of adjudication." (*Id.*).

6.    Baughman filed a third amended proof of claim on May 4, 2016, this time claiming that the Debtor owes him $12,000.00 for property damages and lost wages. (Claim No. 5-4). On May 19, 2016, Baughman filed his fourth amended proof of claim, again claiming that the Debtor owes him $50,000.00 for "Personal Injury." (Claim No. 5-5).

7.    Baughman filed the Response to Objection on May 19, 2016, in which he claimed that the supporting documentation attached to the Second Amended POC is proof of the Debtor's liability. (Resp. to Obj. at 1-2). Baughman also argued that he should "be allowed to Remain as an Unsecured Creditor at an Apportioned 30% Allowed Unsecured Creditors Before This Chapter 13 bankruptcy Court and seek Relief in Avoiding Discharge.[5] Petitioner is seeking and Prays for Monetary Relief/Damages in the Amount of $15,000."[6] (*Id.* at 3).

8.    A hearing was held on the Claim Objection and the Response to Objection on June 1, 2016 (the "June Hearing"). At the June Hearing, Johnson appeared on behalf of the Trustee and Baughman appeared *pro se*. At the June Hearing, Baughman explained that he hired an

---

[4] Hereinafter, all code sections refer to the Bankruptcy Code found in title 11 of the U.S. Code, unless stated otherwise.

[5] Baughman must file an adversary proceeding in order to challenge the dischargeability of a debt or the Debtor's discharge. FED. R. BANKR. P. 3007(b); FED. R. BANKR. P. 7001.

[6] Although in the Second Amended POC Baughman asserted a claim for an amount "not to exceed" $200,000.00, Baughman asserted in the Response to Objection that his claim is for $50,000.00.

Page 4 of 14

attorney in the Hinds County Action, but that he was unable to proceed with litigation because the Debtor filed the Petition. Neither the Debtor nor anyone acting on his behalf attended the June Hearing, so the Court was unable to rule on the Claim Objection. The Court reset the June Hearing so that the Debtor could appear and Baughman could have the opportunity to retain counsel.

9. Baughman filed the Stay Motion on June 15, 2016. In the Stay Motion, Baughman requested that the Court grant relief from the automatic stay for the "sole purpose" of allowing him to pursue the Hinds County Action. (Mot. at 1). Baughman requested a period of time "not to exceed 30 days" to file a late filed proof of claim. (*Id.*). According to Baughman, he "filed several 'Informal' Proofs of Claim Timely . . . ." (*Id.*).[7]

10. The Debtor filed the Response on July 7, 2016, arguing that if the Court were to allow the automatic stay to be terminated, it "would be burdensome and unfairly prejudicial to debtor's bankruptcy estate, as debtor has been in his bankruptcy almost a year." (Resp. at 1).

11. At the Hearing, Baughman stated that he wanted the automatic stay to be terminated so that he could have an opportunity to recover damages in the Hinds County Action. Stover explained at the Hearing that based on the Debtor's disposable income, he will only be able to pay 10%[8] of his unsecured claims. According to Stover, even if the Court were to terminate the

---

[7] It is unclear why Baughman made these arguments. The deadline for filing non-governmental proofs of claims was March 7, 2016, the date Baughman filed his first proof of claim.

[8] Although the Plan proposed to pay 30% to timely filed unsecured creditors pursuant to the Agreed Order, Stover stated at the Hearing that the Debtor needs to modify the Plan because he can now only afford to pay 10% to unsecured creditors. (Hr'g at 10:54:16) (timestamp citations are to the timestamp of the audio recording from the Hearing). Stover and Johnson agreed that the Debtor has "about" $4,000.00 in unsecured claims. (Hr'g at 10:59:29). Neither Stover nor

stay so that Baughman could pursue the Hinds County Action, he would be unable to recover the full amount of any potential judgment through the Plan. Stover also noted that if the Bankruptcy Case were converted to a chapter 7 case, Baughman would receive no payment. Johnson verified that based on the Plan and the Debtor's disposable income, he would only be able to pay about 10% of his unsecured claims.

12.    At the Hearing, the Court denied the Stay Motion from the bench. The Court also reset the Claim Objection and the Response to Objection for hearing on August 8, 2016, at 10:00 a.m. in order to give the parties an opportunity to agree on an amount of the POC.

## Discussion

Throughout the remainder of this Order, the Court will assume, *arguendo,* that Baughman has a valid claim arising from the Hinds County Action. Baughman seeks relief from the automatic stay in order to liquidate his disputed, contingent, unliquidated, and unsecured claim.

The automatic stay is a "key component of federal bankruptcy law [and] is one of the fundamental debtor protections provided by the bankruptcy laws." *In re Meridian Downtown Dev. LLC,* No. 15-00924-NPO, at *7-8 (Bankr. S.D. Miss. July 1, 2015) (quoting *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.),* 817 F.2d 1142, 1146 (5th Cir. 1987)). The automatic stay, which operates upon the filing of a bankruptcy petition, provides for a broad, automatic stay "of litigation, lien enforcement and other actions, judicial or otherwise,

---

Johnson explained the basis for this number, but after reviewing the record, it appears that, excluding the POC and student loans (according to the Plan, the student loans are in deferment), the total amount of timely filed unsecured claims is $14,222.86. (Claim No. 1-1; Claim No. 2-1; Claim No. 4-1). Stover's statement that the Debtor has $4,000.00 in unsecured claims appears to be based upon the 30% of $14,222.86 to be paid to unsecured creditors through the Plan. Thirty percent (30%) of $14,222.86 is $4,266.86, whereas ten percent (10%) of $14,222.86 is $1,422.29. Thus, based on Stover's assertions at the Hearing, the Debtor has approximately $1,400.00 in disposable income to pay his unsecured creditors.

that are attempts to enforce or collect prepetition claims." 3 COLLIER ON BANKRUPTCY ¶ 362.01 (16th ed. 2016). Section 362 also "stays a wide range of actions that would affect or interfere with property of the estate, property of the debtor, or property in the custody of the estate." *Id.*

Specifically as it relates to the Bankruptcy Case and the Stay Motion, § 362(a)(1) "provides for a broad stay of legal proceedings against the debtor that were or could have been commenced prior to the commencement of the bankruptcy case . . . ." 3 COLLIER ON BANKRUPTCY ¶ 362.03[3]. Section 362(a)(1) encompasses all legal proceedings, and "[w]hen litigation is pending against the debtor at the time the bankruptcy case is commenced, the litigation is stayed automatically." *Id.* Because the Debtor filed for bankruptcy after Baughman commenced the Hinds County Action, § 362(a)(1) automatically prevents Baughman from continuing the legal proceedings unless the Court grants him relief from the automatic stay.

### I. Standard for Granting Relief from the Automatic Stay

Stay relief is available to a party in interest, and although the Bankruptcy Code does not define the term, § 1109 suggests that a creditor is a party in interest. 3 COLLIER ON BANKRUPTCY ¶ 362.07[2]. Pursuant to § 1109, "[a] party in interest, including the debtor . . . a creditor . . . may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). Essentially, "any party affected by the stay should be entitled to move for relief." 3 COLLIER ON BANKRUPTCY ¶ 362.07[2]. Baughman is a creditor in the Bankruptcy Case and is also affected by the stay because he is unable to pursue the Hinds County Action. As a party in interest, Baughman may move for relief from the automatic stay pursuant to § 362(d).

Section 362(d) provides that when a party in interest requests relief from the automatic stay, the court *shall* grant relief "for cause, including the lack of adequate protection of an interest

in property of such party in interest." 11 U.S.C. § 362(d)(1). When cause exists so that stay relief is appropriate under § 362(d), the court may terminate, annul, modify, or condition the automatic stay. 11 U.S.C. § 362(d). Whether cause exists for terminating the stay must be determined on a case-by-case basis. *Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.),* 779 F.2d 1068, 1072 (5th Cir. 1986); *Mendoza v. Temple-Inland Mortg. Corp. (In re Mendoza),* 111 F.3d 1264, 1271 (5th Cir. 1997). The party seeking relief from the automatic stay has the burden of proving that cause exits to terminate the automatic stay. 11 U.S.C. § 362(g). Although "cause" is not defined by the Bankruptcy Code, which is why courts must determine cause on a case-by-case basis, "a movant seeking to establish a *prima facie* case for cause should, at a minimum, be required to identify the factual and legal basis under which the movant believes that such cause exists." *In re Kowalsky*, 235 B.R. 590, 595 (Bankr. E.D. Tex. 1999) (citation omitted). Here, the Court must determine whether Baughman has shown that cause exists so that the stay should be terminated to allow him to pursue the Hinds County Action.

## II. No Cause Exists in the Bankruptcy Case

In *In re Choice ATM Enterprises, Inc.,* a case factually similar to the Bankruptcy Case, the bankruptcy court held that courts have the "flexibility to address specific exigencies on a case-by-case basis," but before they can terminate the stay, courts "must weigh the hardships to the parties and the goals of the Bankruptcy Code." No. 14-44982-DML, 2015 WL 1014617, at *3 (Bankr. N.D. Tex. Mar. 4, 2015) (citations omitted). Although allowing a matter to proceed in another forum may constitute cause under § 362(d), "the court should consider whether lifting the stay will result in any great prejudice to the debtor or the bankruptcy estate, whether any hardship to a nondebtor of continuation of the stay outweighs any hardship to [the] debtor, and whether the

creditor has a probability of prevailing on the merits of the case." *In re Kao,* No. 15-31193-H3-13, 2015 WL 9412744, at *2 (Bankr. S.D. Tex. Dec. 21, 2015) (citation omitted). The Court has broad discretion in determining whether to grant relief from the stay, and not all of the factors may be relevant to each case. *Id.* In considering whether cause exists, the Court finds that the following considerations weigh in favor of continuing the automatic stay.

### A. Futility

Granting relief from the automatic stay so that the Debtor would be forced to litigate the Hinds County Action would be a waste of judicial resources, and it would burden the Debtor and the estate. According to Stover, the Debtor only has about $1,400.00 to pay his unsecured claims. Even if Baughman and the Debtor fully litigated the Hinds County Action and Baughman received a $50,000.00 judgment, for example, he would still only be able to recover his pro rata portion of $1,400, the amount the Debtor is able to pay. The only affect litigating the Hinds County Action could have would be to alter the relative percentage of the $1,400.00 unsecured creditors like Baughman would receive, but Baughman would not receive the full amount of any judgment through the Plan. Even if Baughman is successful, he would hypothetically only be able to recover a fraction of a judgment he may obtain through the Plan. The balance of any judgment would be subject to being discharged. Accordingly, it would be futile to terminate the stay to allow Baughman to pursue the Hinds County Action.

### B. Unnecessary Expense and Delay

The Supreme Court of the United States "has long recognized that a chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period.'" *Katchen v. Landy*, 382 U.S. 323, 328-29 (1966) (citing *Ex*

*parte Christy,* 44 U.S. 292, 312 (1845)). Terminating the automatic stay would circumvent this principle as it relates to the Bankruptcy Case. Litigating the Hinds County Action would require a significant amount of judicial resources, would be costly, and would delay the Bankruptcy Case when, no matter the result, Baughman would only be able to recover a small amount of any judgment he were awarded through the Plan.

As the Court previously discussed, Baughman will only be able to recover through the Plan an amount the Debtor is able to afford, no matter the amount of any judgment Baughman is able to obtain. If the stay is terminated and the Hinds County Action proceeds, costly litigation would be required. This result could place the Bankruptcy Case in jeopardy of being converted into a chapter 7 case. If the Bankruptcy Case were converted to a chapter 7 case, Stover contended that Baughman would likely receive nothing. Based on the preceding considerations, the Court finds that terminating the automatic stay would cause unnecessary expense and delay.

## III. Estimation of Claim

If the parties are unable to agree on an amount for the POC at the hearing set on August 8, 2016, the Court will set a hearing to estimate the liquidated amount. For purposes of claim allowance under § 502, the Court *shall* estimate "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the estate." 11 U.S.C. § 502(c)(1). The purpose of § 502(c) is "to promote the equitable administration of the estate from the standpoint of both the debtor and the creditor." 4 COLLIER ON BANKRUPTCY ¶ 502.04[1]. "The essence of section 502(c) is that 'all claims against the debtor be converted into dollar amounts.'" *Id.* (quoting H.R. REP. NO. 595, 95th Cong., 1st Sess. 354 (1977) Rep. 989, 95th Cong., 2d Sess. 65 (1978).

Essentially, § 502(c) "requires the court to estimate any claim the liquidation of which in the ordinary course would unduly delay the administration of the estate." 4 COLLIER ON BANKRUPTCY ¶ 502.04[2]. Requiring estimation has the effect of making the debtor's "discharge broader by allowing for the treatment of claims that formerly would not have been treated and satisfied from the debtor's estate." *Id*. Because "any kind of claim may be asserted in a case under title 11. . . if a contingent or unliquidated claim cannot be fixed or liquidated within an appropriate time frame, the court is required to estimate such claim for the purpose of fixing the claimant's right to share in the assets of the debtor." *Id*. The Court should "use whatever method is best suited to the particular circumstances" in estimating a claim. *Id*. The Court is "bound by the legal rules that govern the ultimate value of the claim (e.g., the court should estimate the worth of a claim based on an alleged breach of contract in accordance with accepted contract law)," but "there are no congressionally mandated limitations on the court's authority to estimate claims." *Id*.

Based on § 502(c) and the discretion bankruptcy courts have "to determine the appropriate method of estimation in light of the particular circumstances of the bankruptcy case before it," the bankruptcy court in *In re G-I Holdings, Inc.* estimated the amount of asbestos-related mass tort claims. 323 B.R. 583, 599 (Bankr. D.N.J. 2005) (quotation omitted). Because § 502(c) is mandatory, "any contingent or unliquidated claim 'shall' be estimated so long as the 'liquidation' of the particular claim would 'unduly delay the administration of the case.'" *Id.* (quoting 11 U.S.C. § 502(c)). Accordingly, the bankruptcy court found that it must make an initial determination that liquidating the claim would unduly delay the bankruptcy case before it engages in the claim estimation process. *Id.*

In *In re G-I Holdings, Inc.,* the bankruptcy court found that the bankruptcy case would be delayed by liquidating the claims because the debtor had more than 150,000 asbestos claims pending against it. *Id.* If the debtor were required to litigate every claim, it would take many years, which would "undoubtedly cause undue delay in the administration of the bankruptcy case and could possibly be the death knell for the successful reorganization of this debtor." *Id.* at 600. Thus, the bankruptcy court concluded that claim estimation was required. *Id.*

Similarly, the bankruptcy court in *In re Lionel, L.L.C.* held that claim estimation was appropriate to prevent a delay in the bankruptcy case when the debtor was facing a large number of suits based on its alleged violation of the Michigan Uniform Trade Secrets Act. No. 04-17324, 2007 WL 2261539, at *1 (Bankr. S.D.N.Y. Aug. 3, 2007). The bankruptcy court noted that a "main goal of the Bankruptcy Code is to equitably distribute the debtor's assets among its creditors. Lengthy bankruptcy proceedings cause delayed distributions, which in turn, greatly devalue the claims of all creditors . . . ." *Id.*, at *2. (citing *In re Paramount Publix Corp.,* 8 F. Supp. 644, 646-47 (S.D.N.Y. 1934)). In *In re Lionel, LLC,* the trade secret litigation had already consumed seven (7) years at the time the bankruptcy court addressed whether it should estimate the claims under § 502(c). *Id.,* at *7. "As both sides have made clear their intention to appeal any adverse determination . . ., adding years of delay to the issue determination, this is clearly a situation contemplated by Congress for the implementation of section 502(c)." *Id.* Accordingly, the bankruptcy court denied the motion for stay relief and determined that claim estimation was appropriate. *Id.*

In *In re Chavez,* a chapter 13 case, the bankruptcy court granted a debtor-landlord's motion for estimation of a claim filed by a former tenant for alleged wrongful conviction. 381 B.R. 582

(Bankr. E.D.N.Y. 2008).  After noting that bankruptcy courts are required to estimate claims "to achieve reorganization, and/or distributions on claims, without awaiting the results of legal proceedings," the bankruptcy court held that because the litigation had already continued for years, "[i]t is clearly within this Court's authority to estimate [the former tenant's] claim to avoid further delay in the administration of the debtor's bankruptcy case."  *Id.* at 587.

The Court finds that, if the parties are unable to reach an agreement regarding the amount of the POC, it has the authority to conduct an estimation of Baughman's presumptively valid claim.  To allow Baughman to proceed with the Hinds County Action would be time consuming, expensive, and futile.  The Court finds that, if it becomes necessary, § 502(c) authorizes it to estimate Baughman's claim to avoid delay in the administration of the Bankruptcy Case.  If claim estimation is required, the Court will use "whatever method is best suited to the particular contingencies at issue" and will apply "the legal rules which govern the ultimate value of the claim," which ordinarily requires the application of state law.  *Bittner v. Borne Chem. Co.,* 691 F.2d 134, 135 (3d Cir. 1982); *In re Brints Cotton Marketing, Inc.,* 737 F.2d 1338, 1341 (5th Cir. 1984).

## IV.  Denial of Stay Motion

Based on the foregoing law, the Court finds that the Stay Motion should be denied and the automatic stay should remain in effect.  This is not to say that Baughman's arguments or the Hinds County Action are without merit.  Baughman may have a viable claim for damages arising out of the car accident caused by the Debtor's allegedly negligent driving.  In consideration of the fact that the Debtor has only a limited amount of disposable income available to pay his unsecured claims through the Plan, however, the Court finds that it would be futile to terminate the stay so

that Baughman may pursue the Hinds County Action. Further, terminating the stay would cause unnecessary expense and delay. If the parties are unable to resolve the dispute regarding the amount of the POC, the Court has the authority to estimate the amount of the POC under § 502(c). Accordingly, the Court finds that the Stay Motion should be denied.

## Conclusion

At the Hearing, the Court reset the Claim Objection and the Response to Objection to August 8, 2016, at 10:00 a.m. in order to give the parties additional time in which to agree upon an amount for the POC. The Court also found that the Stay Motion should be denied because the Hinds County Action would be futile since Baughman's recovery of a judgment through the Plan would be limited. If the parties are unable to agree upon an amount of the POC, the Court will estimate the amount of the POC under § 502(c). Accordingly, the Stay Motion should be denied.

IT IS, THEREFORE, ORDERED that the Stay Motion is hereby denied.

##END OF ORDER##